IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-10053-01-WEB |
| | ) | |
| GARY DEWAYNE MEACHAM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Memorandum and Order**

This matter came before the court on July 23, 2007, for a motions hearing.  The first motion taken up by the court was defendant's Motion for Discovery (Doc. 19).  Based upon statements of counsel, the court found this motion was moot and should be denied.  The court then took up defendant's Motion to Suppress Evidence (Doc. 20), in which defendant argued that evidence seized during a search of his residence on February 10, 2005, should be suppressed.  Although the search was conducted pursuant to a judicial warrant, defendant claims the affidavit in support of the warrant was lacking in probable cause because it was based on statements of an unnamed confidential informant, and it failed to include any showing that the informant was reliable.  In response, the Government asserted that even if the warrant was lacking in probable cause, the evidence should not be suppressed because the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate, such that the search fell under the "good faith exception" of *United States v. Leon*, 468 U.S. 897 (1984).

At the hearing, defense counsel stated that he initially believed the burden was on the Government to produce evidence to support its claim of good faith, but review of the case law

indicated the issue was a legal one which the court could determine from the affidavit itself. Defense counsel argued the good faith exception did not apply because the affidavit was so lacking in probable cause as to preclude any objectively reasonable reliance upon it. The Government, for its part, argued the burden was on the defendant since he was challenging a search conducted pursuant to a warrant. It agreed that the court could determine from the affidavit itself whether the good faith exception applied. Accordingly, the only evidence presented at the July 23 hearing was a copy of the affidavit and the warrant. Def. Exh. 1.

    I. *Good Faith Exception*.

    Inasmuch as the Government effectively concedes that the affidavit failed to establish probable cause, the court will proceed directly to the good faith exception to the exclusionary rule. The exclusionary rule operates as a judicially-created remedy to safeguard Fourth Amendment rights. It achieves this purpose through its deterrent effect rather than as a personal constitutional right of the aggrieved party. *United States v. Leon*, 468 U.S. 897, 906 (1984). In *Leon*, the Supreme Court held that evidence seized pursuant to a warrant issued by a neutral and detached magistrate later found invalid may still be admissible if the executing officer acted in objective good faith and with reasonable reliance on the warrant:

> [In general,] when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope, ... there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the magistrate's error,

2

> rather than his own, cannot logically contribute to the deterrence of
> Fourth Amendment violations.

*Id.* at 920-21 (citation and quotation omitted).

In determining whether the good faith exception applies, the inquiry "is confined to the objectively ascertainable question of whether a reasonably well-trained officer would have known the search was illegal despite the issuing judge's authorization." *United States v. Corral-Corral*, 899 F.2d 927, 932 (10th Cir. 1990).  In answering this question, the court must consider all of the circumstances and assume that the executing officers "have a reasonable knowledge of what the law prohibits." *Id.* (*quoting Leon*, 486 U.S. at 923).  Furthermore, "[t]he government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable." *Corral-Corral*, 899 F.2d at 932.

*Leon* described four particular circumstances in which the exclusionary rule would still apply: (1) if the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function; (3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official  belief in its existence entirely unreasonable"; or (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

II. *Discussion*.

The defendant argues the third reason listed above applies here: that the warrant was so lacking in probable cause as to render official belief in its existence entirely unreasonable.  As to this particular allegation, the court agrees with the parties that the issue can be decided from the "four corners" of the affidavit alone.  *Cf.  United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002)

3

(the majority of circuits find that a reviewing court may look outside the four corners of the affidavit in determining good faith, but in addressing a claim that the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, "we look to the face of the particular affidavit at hand....").   A review of the affidavit, which was submitted by Montgomery County Deputy Sheriff Ronald Cook to a judge of the Montgomery County District Court, shows that it included a detailed description of the defendant's alleged involvement in blowing up a neighbor's mail box and in making explosive devices.   The allegations were based primarily upon statements of an individual described in the affidavit as "a reliable confidential informant."

When the Sheriff's office was first contacted by the victim of the offense on February 2, 2005, Deputy Cook went to the scene and saw that the victim's mail box had been blown apart by an explosion.   The victim lived at Rt. 2, Box 1A, Caney, Kansas.   On February 8, 2005, Deputy Zinser of the Montgomery County Sheriff's office was contacted by the CI, who claimed to have been inside the defendant's residence several days earlier at Rt. 2, Box 1, Caney, Kansas, when he heard a loud explosion.   The CI allegedly went outside, saw the defendant and his son, and asked the defendant what he had killed.   The defendant allegedly responded, "A mailbox."   The CI provided a detailed description of the defendant's actions and his premises, including alleged first-hand observations of explosive devices in the defendant's shop on the premises.   The CI allegedly saw the defendant prepare an explosive device and instruct his son to go across the road to the neighbor's and place the device in the gas tank of the neighbor's vehicle.   When the son returned and said he could not do so because a dog was on the premises, the defendant, according to the CI, placed the device inside an old speaker housing next to a recliner in the defendant's living room.

4

According to the affidavit, the CI stated he had been at the defendant's residence again on February 8, 2005, and had seen that the explosive device was still in the speaker housing.  The CI also claimed to have had several conversations with the defendant and his son about them "experimenting with making bombs and discussing about blowing things up and killing people."  The affidavit further stated that Deputy Cook conducted an interview of the CI on February 9, 2005, and that at the interview the CI relayed the same information he had previously given to Deputy Zinser.  The affidavit also states that on the afternoon of February 9, 2005, a detective from the Sheriff's office spoke to the defendant's wife, who resided at the defendant's residence, and she told him the defendant's son was currently in the yard with a rifle, "[siting] it in," and the defendant was in the shop working on a radio and was also in possession of a firearm.

The general standard for probable cause was described as follows in one Tenth Circuit case:

> A search warrant must be supported by probable cause, requiring "more than mere suspicion but less evidence than is necessary to convict."  *United States v. Burns*, 624 F.2d 95, 99 (10th Cir.1980). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir.1990). An affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity. *See Rowland*, 145 F.3d at 1204. In making a probable-cause determination, the issuing magistrate must examine the totality of the circumstances set forth in the affidavit, including an informant's veracity and basis of knowledge. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Although reviewing courts should afford a magistrate's probable cause decision great deference, this court will not defer if there is no "substantial basis for concluding that probable cause existed." *Rowland*, 145 F.3d at 1204 (quotations omitted).

*United States v. Danhauer*, 229 F.3d 1002, 1005-06 (10th Cir. 2000).

Defendant accurately points out the conclusory nature of the affidavit's assertion in this

instance that the CI was "reliable."  There was no specific background or factual basis cited in the affidavit to support this assertion.  But there are facts in the affidavit that tend to suggest the veracity and basis of knowledge of the informant.  As an initial matter, the affidavit shows that the CI contacted the Sheriff's office and provided information about the offense several days after the mail box had been blown up.  Thus, an underlying offense had already been reported to and confirmed by the Sheriff when the CI contacted the officers.  In contrast to a tip by a confidential source about possible future or unknown events, the officers had confirmation that the crime described had already taken place, and the circumstances known to the officers were consistent with and bore a logical relationship to the allegations made by the CI.  *Cf. United States v. Brown*, 2007 WL 2110800 (10th Cir., July 24, 2007) ("the mere fact that an anonymous tipster thinks there is mischief afoot is not a sufficient basis for police action.").  Additionally, although the CI was not named in the affidavit, the circumstances indicate his identity was either known to the officers or could easily have been determined.  In this regard, the court would not be overstepping its bounds to take judicial notice of the fact that rural Caney, Kansas, is not New York City.  *Cf. Brown, supra* at * 7 ("A reasonable person in this caller's shoes would realize that in all likelihood the police could, if they so chose, determine his identity.").  Along the same lines, the fact that the CI agreed to be interviewed by a deputy in what was apparently a face-to-face meeting is also reasonably viewed as an indication of the informant's veracity or reliability.  *See United States v. Jenkins*, 313 F.3d 549, 554 (10th Cir. 2002).  Finally, the detail provided by the informant and his claims of first-hand observation of the events described tend to provide some support for the informant's allegations.  *See Brown*, 2007 WL 2110800 at * 6 ("We consider it another important indicium of reliability that the caller claimed firsthand knowledge of the alleged conduct."); *United States v. Gates*,  462 U.S.

at 234 (an informant's explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles the tip to greater weight than might otherwise be the case).  The court also notes that the affidavit indicates an officer corroborated a few of the minor details provided by the informant, such as the fact that the defendant and his son lived at or were on the premises in question, that the defendant had a shop on the premises, and that the defendant had firearms on the premises.  Corroboration of these details constitutes some indication that the CI had the sort of intimate access to the defendant that he had claimed, and of course the close proximity of the defendant's residence to the victim's residence provided further reason to give credence to the informant's allegations.  *Cf. Florida v. J.L.*, 529 U.S. 266, 271 (2000) ("All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the defendant].").

Even assuming the absence of further detail about the reliability of the informant means the affidavit did not rise to the level of probable cause, a review of its provisions makes clear this was not a "bare bones" affidavit of the type alluded to in *Leon.  Cf. United States v. Gonzales*, 399 F.3d 1225, (10th Cir. 2005) (affidavit lacking where it failed to establish any connection between address to be searched and the defendant).  Taken as a whole, the affidavit was not so lacking as to render official belief in the existence of probable cause entirely unreasonable.  *See United States v. McKneely*, 6 F.3d 1447, 1454 (10th Cir. 1993) (it is only when an officer's reliance is wholly unwarranted that good faith is absent).  Based on *Leon*, the court concludes the affidavit provided sufficient information to support application of the good faith exception.  Under the circumstances, the officer's reliance upon the judge's determination of probable cause was objectively reasonable.

Accordingly, application of the exclusionary rule would be inappropriate.  *Leon*, 468 U.S. at 926.

    III.  *Conclusion*.

    Defendant's Motion for Discovery (Doc. 19) is DENIED as moot.  Defendant's Motion to Suppress (Doc. 20) is DENIED.  IT IS SO ORDERED this __26th__ Day of July, 2007, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge