IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-10053-01-WEB |
| | ) | |
| GARY DEWAYNE MEACHAM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Memorandum and Order**

This matter is before the court on defendant Gary Meacham's Motion for New Trial.  The court concludes that oral argument would not assist in deciding the issues presented.  For the reasons stated herein, the motion will be denied.

I. *Background*.

Defendant Gary Dewayne Meacham was charged by way of Indictment on March 6, 2007, with four counts of unlawful possession of non-registered destructive devices, in violation of 26 U.S.C. § 5861(d), and one count of aiding and abetting arson, in violation of 18 U.S.C. § 844(i) and 2. Doc. 1.  Because he was unable to afford counsel, the court appointed Assistant Federal Public Defender Steven Gradert to represent him.  Doc. 2.

The Magistrate Judge ordered that the defendant be detained pending trial.  Doc. 8.  Mr. Gradert subsequently filed a motion seeking review of that order, and the court held a hearing on May 24, 2007, after which it reaffirmed that the defendant should be detained.  After the filing of a superseding indictment on June 26, 2007, Mr. Gradert filed additional motions on the defendant's behalf, including a motion for discovery and a motion to suppress evidence.  Docs.

19, 20.   The motion to suppress was heard on July 23, 2007.  In the motion, defense counsel

ably challenged the affidavit that was used to obtain a search warrant in the case, but the court

nevertheless found that evidence from the search was admissible under the good faith exception

of *United States v. Leon*.

The matter proceeded to jury trial on August 7-8, 2007.  In brief, the evidence at trial

included the following.  Early February of 2005, an individual named Tony Bishop reported to

law enforcement officers that his mail box had been blown up.  Bishop lived in a rural area near

Caney, Kansas, and his only proximate neighbor was the defendant, Gary Dewayne Meacham,

who lived with his wife and kids across from the Bishop place.  Evidence was presented that a

few months before this incident, Bishop and the defendant had been involved in a fist fight.

After determining that an explosive device had been used to blow up the mail box, officers

obtained a search warrant for defendant's residence and shop.  The search turned up homemade

explosive devices and evidence that the devices had been manufactured in the defendant's shop

area.

At trial, the government called Gary Dewayne Meacham, Jr. ("Dewayne"), the

defendant's son, to testify.  Dewayne testified that the mail box incident was his father's idea.

Dewayne, who was 16 years old at the time of the incident, said that he and Jerry Simpson, an

individual whom his father allowed to live on the property, assisted the defendant in carrying out

the scheme.  Dewayne testified that the defendant was drunk that night and that he called

Dewayne out and showed him the explosive devices.  The defendant then directed Dewayne and

Simpson to go over to Bishop's premises and set the devices off.  After two failed attempts,

Dewayne said, a third device went off and leveled the mail box.  Dewayne further testified that

the defendant directed him to place another device in the gas tank of one of Bishop's vehicles, but that Dewayne refused to do so.  Dewayne testified that he was charged in juvenile court over the incident and was placed on probation.  Defense counsel vigorously cross-examined Dewayne, challenging his credibility in the light of prior statements which counsel sought to show were inconsistent.  Defense counsel also attempted to suggest that Jerry Simpson may have committed the offense and that Dewayne's witness's testimony against the defendant was prompted by dislike of his father or out of fear of Simpson.[1]  After the Government rested, the defense rested without presenting any evidence.

The jury returned a verdict of guilty on all counts on August 8, 2007, and the court scheduled the sentencing for October 22, 2007.  On September 5, 2007, Mr. Gradert filed a motion to withdraw.  Among other things, the motion asserted that the defendant was unhappy with counsel's trial strategy, including the decision not to call witnesses, and with counsel's advice to the defendant that he should not testify.  The motion stated that the defendant's tone was angry and his language was harsh, and that the opinion of defense counsel was that the attorney-client relationship "has deteriorated to the extent that replacement counsel should be appointed ...."  Doc. 34 at 2.  The court granted the motion to withdraw and appointed attorney David Moses, a member of the CJA panel, to represent Mr. Meacham.

On October 3, 2007, Mr. Moses requested leave to file a motion for new trial out of time and also requested an order for a trial transcript, which he argued was necessary to provide effective representation.  The court granted these motions following a hearing on October 19,

---

[1] Although the Government initially indicated that Jerry Simpson would likely be a witness in its case-in-chief, the Government, like the defense, apparently decided not to call him as a witness.

2007.  The court directed defense counsel to file any motion for new trial within seven days of his receipt of the trial transcript.

II.  *Motion for New Trial*.

On January 1, 2008, Mr. Moses filed a motion for new trial.  The motion asserts that the defendant "wanted to testify at trial" but that "Mr. Gradert refused to allow him to testify."  Doc. 47 at 2.  The motion states that defendant would have testified that he had no involvement in the incident and that he was inside sleeping when it occurred.  It further states that "two witnesses could have been called that would have presented exculpatory evidence: Rick Bruner and Jerry Simpson."  *Id*.  The motion states that both of these witnesses were subpoenaed but were not called as witnesses.  Attached to the motion is an affidavit apparently signed by Rick Bruner, in which he says (among other things) that Jerry Simpson planted evidence in Meacham's house and that the defendant "had no involvement with the destruction of the mailbox, or with the illegal explosive devices found on his property."  Doc. 47, Exh. A.  Bruner allegedly knows this, his affidavit says, "because Jerry Simpson confessed these facts to me."  *Id.*  The motion for new trial further states that although Simpson might well have invoked his fifth amendment privilege and refused to testify, "he should have been called" and a conference held outside the hearing of the jury to see if he would testify.  In sum, the motion argues that the defendant is entitled to a new trial because Mr. Gradert provided ineffective assistance of counsel.

In response, the United States points out the Tenth Circuit has repeatedly held that claims based on ineffective assistance of counsel should be brought in collateral proceedings, not on direct appeal.  It argues the defendant has not alleged a claim showing "*per se* ineffective assistance" under *United States v. Cronic*, and for that reason the United States argues the

4

motion for new trial should be denied.

III.  *Discussion*.

Rule 33 provides in part that the court may grant a new trial "if the interests of justice so require."  Fed.R.Crim.P. 33.  Although such motions generally must be brought within seven days after the verdict, out of an abundance of caution the court found excusable neglect for a late filing based primarily upon the undisputed fact that communications between the defendant and Mr. Gradert significantly deteriorated shortly after the verdict.

Claims asserting ineffectiveness of counsel are normally raised for the first time in collateral proceedings.  *United States v. Moses*, 2006 WL 1459836 (D. Id. 2006).  Trial courts have sometimes addressed such motions under Rule 33, however, utilizing the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Moses, supra*.  To support a claim of ineffective assistance of counsel under *Strickland*, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland*, 466 U.S. at 687.

Defendant's first contention of ineffective assistance is that Mr. Gradert refused to let him testify.  The court notes that this is merely an assertion by counsel in a brief; it is not supported by any affidavit or other testimony under oath from the defendant.  It is a matter of common knowledge in this country that persons accused of a crime have a right to testify if they want to.  Defendant's motion does not claim that he did not understand that right, nor does it address whether Mr. Gradert told him he had such a right.  The motion further fails to specify what actions or words Mr. Gradert took or uttered, except to state in conclusory fashion that he "refused to let" the defendant testify.  Nowhere does defendant's brief specify in what respect

Mr. Gradert's conduct went beyond the realm of a recommendation not to testify into a genuine

usurpation of the right to testify.  Absent such a basis, the defendant is not entitled to a new trial,

nor is he entitled to an evidentiary foray that will further delay his sentencing.

Defendant's complaint that his attorney was ineffective for failing to call Rick Bruner

and Jerry Simpson as witnesses fares no better at this stage.  As the Supreme Court noted in

*Strickland*:

> Judicial scrutiny of counsel's performance must be highly
> deferential. It is all too tempting for a defendant to second-guess
> counsel's assistance after conviction or adverse sentence, and it is
> all too easy for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act or omission
> of counsel was unreasonable.  A fair assessment of attorney
> performance requires that every effort be made to eliminate the
> distorting effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct from
> counsel's perspective at the time. Because of the difficulties
> inherent in making the evaluation, a court must indulge a strong
> presumption that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the defendant must
> overcome the presumption that, under the circumstances, the
> challenged action "might be considered sound trial strategy."
> There are countless ways to provide effective assistance in any
> given case. Even the best criminal defense attorneys would not
> defend a particular client in the same way.
>
> The availability of intrusive post-trial inquiry into attorney
> performance or of detailed guidelines for its evaluation would
> encourage the proliferation of ineffectiveness challenges. Criminal
> trials resolved unfavorably to the defendant would increasingly
> come to be followed by a second trial, this one of counsel's
> unsuccessful defense. Counsel's performance and even willingness
> to serve could be adversely affected. Intensive scrutiny of counsel
> and rigid requirements for acceptable assistance could dampen the
> ardor and impair the independence of defense counsel, discourage
> the acceptance of assigned cases, and undermine the trust between
> attorney and client.

*Strickland v. Washington*, 466 U.S. at 689-90 (citations omitted).

Defendant claims it was unreasonable not to call Rick Bruner to testify because "has direct knowledge that Jerry Simpson was responsible for the crimes for which Defendant was ultimately convicted." Doc. 47 at 9.  Mr. Bruner's affidavit, however, shows that any knowledge he has is indirect, not direct.  He was not an eyewitness to the events in question, but rather claims that Jerry Simpson "confessed ... to me" that the defendant had no involvement in the offenses.  As an initial matter, defendant does not explain why Mr. Bruner's testimony would not be inadmissible hearsay.  *Cf.*  Fed.R.Evid.804(b)(3) (A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances indicate the trustworthiness of the statement).  Nor does he offer any suggestion of who Bruner is or why his testimony would likely have been viewed as credible by the jury.  Of course, calling a defense witness to offer an exculpatory confession of this sort could well torpedo a defendant's chances of acquittal if the jury were to find the witness was not credible.  Defendant's allegations do not show that Mr. Gradert's assistance was ineffective.  As for the decision not to call Jerry Simpson as a witness, defendant's brief recognizes that it is unlikely he would have taken the stand and incriminated himself.  Moreover, on the present record, there is nothing to overcome the presumption that it was a sound strategic decision to argue to the jury that the government's case depended largely on the doubtful credibility of a solitary witness – Dewayne Meacham – rather than risk calling Simpson and have him end up corroborating Dewayne's testimony.  In sum, based on the record now before the court, defendant has failed to make a colorable claim that his counsel's performance was deficient or that it likely made a difference in the outcome of the case.

7

The Tenth Circuit has stated that ineffective assistance of counsel claims should be "presented first to the district court in collateral proceedings." *United States v. Hunt*, 62 Fed.Appx. 272, 275, 2003 WL 1771723 (10th Cir. 2003) (*citing United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995)). *See also United States v. Smith*, 2008 WL 55996 (10th Cir., Jan. 4, 2008) (collateral review "is almost always the proper course for such claims"). Even assuming this court has discretion to undertake evidentiary hearings under Rule 33 when allegations of ineffective assistance are raised, the court declines to do so here on the record before it. If the defendant has any basis to pursue a claim for ineffective assistance of counsel, he may seek collateral relief under 28 U.S.C. § 2255 after his conviction becomes final. *Cf. United States v. Sands*, 968 F.2d 1058, 1065 (10th Cir. 1992).

IV. *Conclusion*.

Defendant's Motion for New Trial (Doc. 46) is DENIED. The defendant's sentencing is hereby scheduled for March 7, 2008, at 11:00 a.m.

IT IS SO ORDERED this  21st  Day of February, 2008, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge